**No. 23-55751**

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

_____

A.R.L., a minor, et al.,
*Plaintiff – Appellant,*
v.
CITY OF FULLERTON, et al.,
*Defendants - Appellees*,

_____

# APPELLEES' SUPPLEMENTAL BRIEF RE: *HERNANDEZ V. LOS ANGELES*

_____

Appeal Following Grant of Summary Judgment
United States District Court, Central District of California
U.S.D.C. Case No: 21-CV-00929-FWS-JDE
Hon. Fred W. Slaughter, Judge Presiding

_____

Scott Wm. Davenport[*]
California State Bar 159432
**JONES MAYER**
3777 N. Harbor Blvd.
Fullerton, California 92835
Tel: 714-446-1400 ⬧ Fax: 714-446-1448
Email: swd@Jones-Mayer.com
[*] *Certified Appellate Specialist*

Attorneys for Defendants-Appellees,
CITY OF FULLERTON, et al.

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................2

TABLE OF AUTHORITIES ...........................................................................3

LEGAL ARGUMENT ....................................................................................4

1.      INTRODUCTION ................................................................................4

2.      *HERNANDEZ* AFFIRMED THE USE OF DEADLY FORCE ON A SUSPECT ADVANCING WITH A KNIFE; IT REVERSED ONLY WITH RESPECT TO SHOTS FIRED AFTER THE SUSPECT HAD FALLEN TO THE GROUND AND WAS NO LONGER A THREAT ......5

3.      *HERNANDEZ* CONFIRMS THAT APPELLEES ARE ENTITLED TO SUMMARY JUDGMENT AS ALL SHOTS WERE FIRED WHILE THE SUSPECT WAS ADVANCING AND NO SHOTS WERE FIRED AFTER THE SUSPECT HAD FALLEN TO THE GROUND AND WAS NO LONGER A THREAT ................................................................6

4.      CONCLUSION .....................................................................................8

CERTIFICATE OF COMPLIANCE ................................................................10

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Graham v. Connor,* 490 U.S. 386 (1989) ..................................................................8

*Hernandez v. Los Angeles,* __ F.4th __ , 2025 U.S. App. LEXIS 13353
　(9th Cir. June 2, 2025) (en banc) ............................................................. *passim*

*Malley v. Briggs*, 475 U.S. 335 (1986) ..................................................................9

*Zion v. County of Orange,* 874 F.3d 1072, 1076 (9th Cir. 2017) ........................7, 8

**LEGAL ARGUMENT**

## 1.  INTRODUCTION

After this case was fully briefed and argued, this Court issued an order vacating the submission of the appeal until the issuance of the mandate in *Hernandez v. Los Angeles,* __ F.4th __ , 2025 U.S. App. LEXIS 13353 (9th Cir. June 2, 2025) (en banc). Dkt. 48. In *Hernandez,* the Ninth Circuit issued a published *en banc* decision upholding the use of deadly force as to an initial volley of four shots where a suspect was advancing with a knife, but reversed as to the final two shots which were fired after the suspect had fallen to the ground and was no longer a threat.

After *Hernandez* was issued, this Court issued a follow up order directing the parties to file a supplemental brief addressing what impact, if any, *Hernandez* should have upon the Court's analysis in this case. Dkt. 49.

As discussed herein, *Hernandez* confirms the notion that appellees' use of force was proper as all shots were fired in a span of approximately four seconds and no shots were fired after the suspect had fallen to the ground and was no longer a threat.

**2.** **_HERNANDEZ_ AFFIRMED THE USE OF DEADLY FORCE ON A SUSPECT ADVANCING WITH A KNIFE; IT REVERSED ONLY WITH RESPECT TO SHOTS FIRED AFTER THE SUSPECT HAD FALLEN TO THE GROUND AND WAS NO LONGER A THREAT**

In *Hernandez,* a Los Angeles Police Officer shot Daniel Hernandez after he ignored the officer's repeated commands to stop advancing toward her and drop his knife. Although the shooting occurred over a mere six seconds, the majority of the *en banc* panel concluded that the officer fired three distinct volleys of shots, pausing after each. The final volley – shots five and six – occurred after Hernandez had collapsed on the ground, was on his back, and was rolling away from the officer. *Id.* at * 7.

At trial, the District Court granted summary judgment in favor of the officer, concluding that the officer's use of force was reasonable under the totality of the circumstances *and* that the officer was entitled to qualified immunity because the law did not clearly establish that her actions constituted excessive force. *Id.* at *13-14.

On appeal, a three-judge panel affirmed in part and reversed in part, holding that a triable issue of fact existed with respect to the final two shots. *Id.* at 14. However, the panel also held that the officer was entitled to summary judgment for

the final two shots under the doctrine of qualified immunity because the law was not clearly established. *Id.* at \*14.

Thereafter, a majority of the *en banc* court reversed the grant of summary judgment, holding that a fallen and injured suspect armed only with a bladed instrument does not present a continuing threat merely because he makes non-threatening movements on the ground without attempting to get up. *Id.* at \*8. In addition, the Court concluded that the law in this regard was clearly established such that the officer was not entitled to qualified immunity. *Id.*

A dissent was issued by Judge Nelson, with whom Judge Bress and Bumatay joined, and with whom Judge Bade joined in part. In this dissent, four of the judges concluded that the officer did not use excessive force in firing six shots over just six seconds as there was no time to reassess the risk Hernandez posed during this short time frame. *Id*. at \*30 (J. Nelson, Dis).

3.  ***HERNANDEZ* CONFIRMS THAT APPELLEES ARE ENTITLED TO SUMMARY JUDGMENT AS ALL SHOTS WERE FIRED WHILE THE SUSPECT WAS ADVANCING AND NO SHOTS WERE FIRED AFTER HE HAD FALLEN TO THE GROUND AND WAS NO LONGER A THREAT**

In this case, Jesus Leon was fatally shot after he consumed alcohol and methamphetamine, assaulted his cousin Mario with a large knife with an eight-inch

6

blade, and continued advancing upon the officers and Mario while brandishing the knife.

Specifically, when officers arrived on scene, they observed the altercation between Mario, who had armed himself with a stick, and Jesus who was holding the knife. Upon being contacted by officers, Mario immediately dropped the stick and backed up toward the middle of the street. However, Jesus refused to drop the knife and even put it up to his own neck.

After *multiple* less lethal beanbag rounds proved ineffective, Jesus continued to advance toward the responding officers and Mario. Believing the officers and Mario were in danger, both Corporal McShane and Officer Valdes fired their service weapons multiple times. Jesus fell to the ground with the knife still in his hand but then sat up again and held the knife to his own throat. He then fell onto his back and dropped the knife. All shots were fired within a span of approximately 4 seconds and, unlike *Hernandez,* no additional shots were fired after Jesus fell to the ground. *Exhibit* "B" at 5:47-5:51.

The lynchpin of the *en banc* opinion in *Hernandez* was that the officer fired *after* the suspect had fallen to the ground and was no longer a threat. *Hernandez*, at *8. However, this is contrary to the facts of this case in which all shots were fired while Herandez was continuing to advance. *Exhibit* "B" at 5:47-5:51. As such, *Hernandez* actually confirms that the use of force was proper and is distinguishable

7

to the extent that the use of force ceased after the suspect had fallen to the ground and was no longer a threat.

Moreover, as to the issue of qualified immunity, *Hernandez* relied in large part on *Zion v. County of Orange,* 874 F.3d 1072, 1076 (9th Cir. 2017) for the proposition that the "use of deadly force against a non-threatening suspect is unreasonable," including "continued force against a suspect who has been brought to the ground." *Hernandez*, at *8. However, unlike *Hernandez* or *Zion,* this case does not involve the firing of additional shots at a suspect who has fallen to the ground and is incapacitated. As such, it simply cannot be said that the law was clearly established the mere firing of multiple shots on a suspect who *continued to advance* was constitutionally impermissible.[1]

## 4. **CONCLUSION**

As stated in Appellees' Answering Brief, appellant's entire case was premised on the notion that although Jesus had a knife and was advancing on the officers, he was not actually a threat at the moment the shots were fired. This, however, is not the proper inquiry. The proper resolution revolves around whether

---

[1] Indeed, this begs the question of whether the law in *Hernandez* was clearly established given that a dispute existed between the judges who analyzed the case as to whether a constitutional violation had occurred. Stated another way, if experienced appellate jurists cannot agree on the state of the law from the comfort of their own chambers, how can such a mandate be enforced upon law enforcement officers who are forced to make a split-second decision under life-threatening circumstances?

the officers' use of force was reasonable under the totality of the circumstances and/or whether they made a reasonable mistake of fact. And, to the extent it was a proper inquiry, it was soundly rejected in *Hernandez*. Simply stated, the use of force was reasonable under the totality of the circumstances. *Graham v. Connor,* 490 U.S. 386, 394-395 (1989).

Moreover, to the extent that appellees were wrong about either the nature of the law *or* whether Jesus, in fact, had the intent and the ability to harm them, they are nonetheless entitled to qualified immunity as there is no evidence they were either "plainly incompetent" or "knowingly violate[d] the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

In sum, not only is there nothing in *Hernandez* which compels reversal in this case, *Hernandez* actually confirms the notion that appellees' use of force was proper as all shots were fired in a span of approximately four seconds and no shots were fired after the suspect had fallen to the ground and was no longer a threat. The order granting summary judgment should be affirmed.

Date: June 17, 2025            **JONES MAYER**

By: */s/ Scott Wm. Davenport*

Attorneys for Appellees,
CITY OF FULLERTON, et al.

9

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-55751

I am the attorney or self-represented party.

**This brief contains** | 1,611 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◉ complies with the length limit designated by court order dated | 06/02/2025 |.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Scott Wm. Davenport | **Date** | 06/17/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*